UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | 1:21-cr-576 |
| | : | |
| **FLOYD RAY ROSEBERRY** | : | |
| Defendant. | : | |

**GOVERNMENT'S REPLY IN OPPOSITION TO DEFENDANT'S MOTION TO RECONSIDER ORDER OF DETENTION AND IMPOSE CONDITIONS OF RELEASE**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully moves the Court to deny the defendant's Motion to Reconsider Order of Detention and Impose Conditions of Release. In summary, the government submits that there is strong evidence to believe that the defendant, Floyd Roseberry ("defendant" or "Roseberry"), poses a danger to the community. The defendant claimed to have a bomb which could be detonated by loud sounds and broadcast demands on Facebook to meet with President Joe Biden. Further, Roseberry claimed that there were four others with bombs in Washington, D.C. ready to act if he were killed and called on other "patriots" to join him because "the revolution is on." The defendant stands charged by indictment with violations of 18 U.S.C. § 2332a(a)(2)(A)&(C) (Use of Weapons of Mass Destruction), and 18 U.S.C. § 844(e) (Threats to Use Explosive Materials). A person convicted 18 U.S.C. § 2332a(a)(2)(A)&(C) may be imprisoned for any term of years or for life, and a person convicted of a violation of 18 U.S.C. § 844(e) may be imprisoned up to 10 years.

## PROCEDURAL HISTORY

The defendant was arrested on August 19, 2021, and had an initial appearance on August 20, 2021, at which time the defendant consented to detention, reserving the right to reopen the matter at a later date. A competency hearing was held on September 9, 2021, and the court found

1

Roseberry competent to stand trial. Roseberry was charged by the Grand Jury with the aforementioned violations on September 14, 2021.

## FACTUAL BACKGROUND

1. On August 19, 2021, Floyd Ray Roseberry travelled from his home in Grover, North Carolina to Washington, D.C. At approximately 9:45 a.m., Roseberry drove his truck onto the sidewalk at First Street and Independence Avenue, Northeast, in Washington, D.C., adjacent to the Jefferson Building of the Library of Congress. While in the truck, Roseberry live broadcast from his Facebook account, claiming to have an ammonium nitrate and/or a Tannerite bomb in the toolbox of this truck. Roseberry claimed that the explosive device was engineered such that any loud sound would cause it to detonate, and according to Roseberry, would destroy two and a half blocks.

2. On his Facebook Live videos, Roseberry claimed that he was one of five individuals in Washington, D.C. with bombs, and that they would detonate their devices if his conditions were not met. Roseberry demanded to speak to President Biden about several grievances, including the Biden Administration policies in Afghanistan, health care policy, the national coin shortage, and demanded that President Biden step down. After a several-hour standoff, Roseberry surrendered to law enforcement.

3. Below are examples of statements Roseberry made on his Facebook Live broadcast:
    a. [speaking to people walking on the sidewalk near his vehicle] "Hey, call the police and tell them to come out here and clear the Capitol. Tell them to clear the Capitol. Tell them to clear it. These fucking people think I'm joking, don't they? Hey ma'am, will you call them? I've called 911 a couple times. Tell them to come out here and clear this fucking place out. They need to clear that 'cause I got a bomb in

here. I don't want nobody hurt. Yes sir, I don't want nobody hurt. I'm not coming here to hurt nobody. I'm not lying, tell them there's some more."

b. "Sir, this thing here, all I'm doing, I'm not gonna let this bomb go off, but if these windows break, see that little speaker right there, it sets off on decimals. Clear the block, clear the block. Joe Biden, I'm not hurting nobody, but I think these flags need to go to half-staff brotha'. I'm telling you, my windows pop, this bomb is gonna go, it's made for decimals. Your military experts, that you let get their legs blown off, are the ones that built this and if you don't think its real gun powder in there boss man, there's gun powder in there this is some of the strongest shit you can get. I got two and a half pound of Tannerite. Go ahead and get 'em all in the building, but I'm telling you Biden, if these windows pop this bomb goes and there's five of 'em here."

c. "We here. The fucking revolution starts today, Joe Biden. And before you go crackin' any pop on me, you better get your military experts out, ask them motherfuckers what a 7-pound keg of gun powder will do with 2.5 pound of Tannerite on that motherfucker."

d. "If you want to shoot me and take the chance of blowing up two-and-a-half city blocks, 'cause that toolbox is full, ammonium nitrate is full."


Roseberry in his vehicle near the Library of Congress

4. Roseberry can be seen holding a metal can that appeared to have been fashioned into an explosive device. At approximately 2:15 pm, he was taken into custody by law enforcement.


Roseberry holding the cannister

5. After Roseberry's arrest, the can that he was observed holding was recovered in the front seat of the truck. The can had approximately 1 – 2" of smokeless black powder in the bottom and a fabricated trigger was attached to the top of the can.

6. On August 20, 2021, local law enforcement official in Cleveland County, North Carolina, where Roseberry lived, contacted the FBI to report that the official recognized Roseberry as the subject of a report received the previous day.  The person who made the report to Cleveland County officials (W-1) said that Roseberry recently expressed anti-government views and an intent to travel to Virginia or Washington, D.C. to conduct acts of violence. W-1 also reported that Roseberry told W-1 that he "ordered a trench coat to protect him from Taser and pepper ball guns and he would just tip his cowboy hat at the police."

7. On August 20, 2021, Roseberry was charged by complaint with violating 18 U.S.C. § 2332a(a)(2)(A) & (C) and 18 U.S.C. § 844(e).

## PROCEDURES AND STATUTORY STANDARD

The "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). The parties may proceed by way of proffer and hearsay is permitted.  Id.; United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996).  Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986); United States v. Williams, 798 F. Supp. 34, 36 (D.D.C. 1992).  A pretrial detention hearing should not be used as a discovery device, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery.  Smith, 79 F.3d at 1210, see also Williams, 798 F. Supp. at 36. The complaint or indictment, standing alone, constitutes probable cause that the person charged committed the offense.  See Smith, 79 F.3d at 1210.

The Bail Reform Act, Section 3142(e), which authorizes detention without bail pending trial, provides:

> If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer ***shall order*** the detention of the person before trial.

18 U.S.C. § 3142(e) (emphasis added).

A finding that no condition or combination of conditions will reasonably assure the appearance of the defendant must be supported by a preponderance of the evidence, and a finding that no condition or combination of conditions will reasonably assure the safety of any other person and the community must be supported by clear and convincing evidence. See 18 U.S.C. § 3142(e); United States v. Simpkins, 826 F.2d 94, 96 (D.C. Cir. 1987) (citation omitted); see also United States v. Xulam, 84 F.3d 441, 442 (D.C. Cir. 1996) (per curiam).

Factors that the Court must consider when determining whether there are release conditions that will reasonably assure a defendant's appearance as required and the safety of any person and the community are: (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g). A defendant must be detained pending trial if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . ." 18 U.S.C. § 3142(e).

## **ANALYSIS**

In this case, an analysis of the factors listed above favors the defendant's detention. The nature and circumstances of the offenses charged are serious. The defendant is charged with threatening to use a weapon of mass destruction and threatening to use an explosive device. If convicted of all charges, the defendant faces a maximum sentence of life imprisonment; the weight of the evidence against the defendant is quite strong; and, given Roseberry's statements and apparent desire to start a "revolution," his release could pose a serious danger to the community.

### I.  Nature and Circumstances of the Crime Charged

The defendant is charged with threating to use a weapon of mass destruction, in violation of 18 U.S.C. § 2332a(a)(2)(A)&(C) and threating to use explosive materials, in violation of 18 U.S.C. § 844(e).  A person convicted of 18 U.S.C. § 2332a(a)(2)(A) & (C) may be imprisoned for life.  There is a rebuttable presumption that no conditions or combination of conditions will reasonable assure the appearance of the defendant, pursuant to 18 U.S.C. 3142(e)(3)(C).  Further, the defendant is charged with a crime of violence since the offense charged has "an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a).

In his motion, the defendant attempts to calculate his potential sentencing guidelines and concludes that, with a guilty plea, he faces a guideline range of 12 to 18 months.  Even assuming the defendant correctly calculates his guidelines under 2A6.1, he leaves out the applicability of § 3A1.4, which provides for an increase of 12 levels, or to level 32, whichever is higher, if the offense "involved, or was intended to promote a federal crime of terrorism." USSG § 3A1.4(a). § 3A1.4 (b) also places a defendant at a Criminal History Category VI, regardless of their actual Criminal History score. USSG § 3A1.4(b).  A "federal crime of terrorism" is defined, in part, as an offense that "is calculated to influence or affect the conduct of government by intimidation or

coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5). Simply applying § 3A1.4 would change the defendant's guideline range from 12 to 18 months to 210 to 262 months.

## II. Weight of the Evidence

The government's evidence against the defendant is strong. His actions were all documented by several Facebook Live videos and broadcast to a potentially wide audience, all of which the government obtained via search warrant. Roseberry makes his demands clear, insisting that he speak to President Biden so that he can air his various grievances, including that President Biden (and possibly Nancy Pelosi) resign from office, stating "I love this land, I love God, I love you Joe Biden. I love you, Nancy Pelosi. Y'all need to step down. Y'all need to step down quickly cause I'm one of five that's rolled into this state well this little DC. One of five."

The defendant argues that because his threats were conditional, they were not true threats. As courts have observed, conditional threats can still be true threats: "[m]ost threats are conditional; they are designed to accomplish something; the threatener hopes that they *will* accomplish it, so that he won't have to carry out the threats. They are threats nonetheless." *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990).

Here, Roseberry was sitting in his truck with what appeared to be an explosive device on his lap, which had an apparent triggering mechanism near the top. He made repeated statements that he didn't want to die but was willing to in order to further his cause. He also made several references to starting a "revolution." Roseberry further raised the stakes when he said there were four other individuals around Washington, D.C. with bombs, ready to act if his demands were not met or if he were killed. Given the circumstance and the nature of his threat, it would have been reasonable for law enforcement to use force—including discharging their firearms—against Roseberry, potentially causing the supposed device to explode. Moreover, a law enforcement

response other than a gunshot could still cause a loud sound, such as the use of a flashbang, breaking the truck window to extract Roseberry, or any other loud sound that may be present in an urban setting. In short, it is reasonably foreseeable that the conclusion of the standoff would have caused a loud sound, and, had the bomb been real, resulted in significant damage to surrounding buildings, and possibly mass casualties.

### III. The Nature and Seriousness of the Danger to any Person or the Community

In his Facebook Live videos, Roseberry makes it clear that he believes he is at the vanguard of a revolution. "I'm looking for all my other patriots to come out and help me, 'cause I got it standing, I got the foundation built, people. I'm here, they know I'm here." Later in one of his Facebook Live videos, Roseberry said, "All y'all people out there said to us…uhhh…it's time to take a stand, time to take a stand. Well, motherfuckers, I'm up here today. I'm setting the foundation. If all y'all motherfuckers wanna' sit at home and explain to your kids why you didn't go up there, you can do that, I'm good with it. But for me, that ain't what I am. I'm an American patriot. That's what I am. This platform is gonna' be built, and when its built you're gonna' know it." At one point, Roseberry said that he's "ready to die for a cause."

Roseberry later implied that if anything were to happen to him, four others in the Washington, D.C. area were armed with bombs and they were willing to detonate them. For example, Roseberry stated: "When this bomb goes off there's gonna' be four more right behind it and then the patriots are gonna' come cause you don't know where them four sittin'. One of them might be sitting right at your back door. Better talk to me, Joe."

Were the defendant released on bond, given his rhetoric and stated goals, he would pose a significant threat to the community.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, the United States respectfully requests that the Court deny the defendant's Motion to Reconsider Order of Detention and Impose Conditions of Release, and find that the defendant poses a danger to the community if released and that there are no conditions or a combination of conditions available that will reasonably assure his appearance as required by the Court.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

__/s/ Christopher Tortorice_____
Christopher Tortorice
Assistant United States Attorney
TX Bar Number 24048912
National Security Section
601 D Street, N.W.
Washington, D.C.  20530
Office: (202) 252-7155
Christopher.tortorice@usdoj.gov