# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No.: 21-576 (RC) |
| | : | |
| FLOYD RAY ROSEBERRY, | : | Re Document No.:    13 |
| | : | |
| Defendant. | : | |

## ORDER

### GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER OF DETENTION AND IMPOSING CONDITIONS OF RELEASE

On September 14, 2021, Defendant Floyd Roseberry was indicted for violating 18 U.S.C. § 2332a(a)(2)(A)&(C) (Use of Weapons of Mass Destruction), and 18 U.S.C. § 844(e) (Threats to Use Explosive Materials). *See* Indictment, ECF No. 10. Mr. Roseberry consented to detention, and Magistrate Judge Zia M. Faruqui ordered detention. *See* Min. Entry (Sept. 22, 2021). Mr. Roseberry now argues that circumstances have changed and that there are conditions of release that will reasonably assure both the safety of the community and his appearance in court. Def.'s Mot. to Reconsider Order of Detention and Impose Conditions of Release ("Mot.") at 1, ECF No. 13. Mr. Roseberry claims that he was mentally impaired on the date of the charged offenses due to having taken contraindicated medications which are known to trigger manic and psychotic episodes in individuals like him with bipolar disorder. He claims that he is now stable and properly medicated and will continue to be if released. The government opposes Mr. Roseberry's release. Gov't Reply in Opp'n to Def.'s Mot. ("Opp'n") at 1, ECF No. 14. At the hearing, it agreed that Mr. Roseberry is not a flight risk. August 1, 2022 Hearing Transcript. But it maintains that there is strong evidence that he poses a danger to the community.

Pursuant to 18 U.S.C. § 3142(g), a court considering release of a defendant pending trial is to consider whether there are any "conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(g).  The statute prescribes four factors for the court to consider: "(1) the nature and circumstances of the offense charged;" "(2) the weight of the evidence against the person;" (3) the person's "history and characteristics[,] . . . including," *inter alia*, their "physical and mental condition;" and "(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id.*

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Munchel*, 991 F.3d 1273, 1279 (D.C. Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)); *see also* 18 U.S.C. § 3142(j) ("Nothing in this section shall be construed as modifying or limiting the presumption of innocence.").  "To justify detention on the basis of dangerousness, the government must prove by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure the safety of any other person and the community.'" *Munchel*, 991 F.3d at 1279–80 (quoting 18 U.S.C. § 3142(f)).  "Thus, a defendant's detention based on dangerousness accords with due process only insofar as the district court determines that the defendant's history, characteristics, and alleged criminal conduct make clear that he or she poses a concrete, prospective threat to public safety." *Id.* at 1280.

The Court will examine each of § 3142(g)'s factors in turn.  First, the nature of the offenses charged are serious but in dispute.  The parties agree that on August 19, 2021, Mr. Roseberry drove from his home in North Carolina to Washington, D.C.  Opp'n at 2.  He parked his truck on a sidewalk next to the Library of Congress and began a Facebook livestream while

sitting inside his truck.  *Id.*  He then (falsely) claimed to have an ammonium nitrate and/or a Tannerite bomb in the toolbox of his truck, which he (falsely) claimed was engineered to detonate upon any loud sound such as a bullet shot.  *Id.*  The parties disagree, however, as to whether Mr. Roseberry actually made any threats.  The government points out that Mr. Roseberry demanded to speak to President Biden and claimed that he was one of five individuals in Washington, D.C. with bombs, and that he was willing to die to further his cause.  Opp'n at 2– 4, 8.  Mr. Roseberry responds that he repeatedly emphasized his desire not to harm anyone and stated that he had no control of the bomb and that it could only detonate if he was shot.  Mot. at 4; Def.'s Reply to Gov't's Reply ("Reply") at 4–6, ECF No. 15.  Mr. Roseberry reasons that because he made no threat, Count I should be dropped.  August 1, 2022 Hearing Transcript.  He further claims that under Count II, the United States Sentencing Guidelines yields a 12-18 month range—but he has already served nearly twelve months in jail.  Mot. at 8–9.  The government disagrees and argues that the federal terrorism enhancement would apply here.  Opp'n at 7–8. The Court need not resolve these issues now.  Although the charged offenses are severe, there is a genuine dispute whether Mr. Roseberry actually made a threat to use a weapon of mass destruction.

In addition, Mr. Roseberry's mental health helps to put the circumstances of his charged offenses in perspective.  Mr. Roseberry has been diagnosed with bipolar disorder and PTSD from a traumatic childhood.  Mot. at 2.  The government does not dispute that Mr. Roseberry was under the influence of contraindicated medications and that these drugs played a role in the offenses charged.  August 8, 2022 Hearing Transcript.  At the hearing, Dr. Teresa Grant, a forensic psychologist who evaluated Mr. Roseberry, testified that she was "shocked" that he was taking Adderall and Valium at the time of the alleged offenses because these were "really serious

drugs" that could lead to "manic and/or psychotic episodes" for somebody with bipolar disorder. *Id.* The government counsel conceded that his wife found this assessment consistent with her experience as a psychiatric nurse practitioner. *Id.* Furthermore, Mr. Roseberry had been prescribed these drugs by his local primary care physician—not a psychiatrist. *Id.*

Second, the weight of the evidence against Mr. Roseberry is significant. The government claims that all of Mr. Roseberry's actions were documented by several Facebook Live videos, which it obtained via search warrant. Opp'n at 8. As mentioned above, however, the parties dispute the significance of Mr. Roseberry's statements and reach different conclusions from the record about whether he made a threat. So this factor does not tip decisively in favor of detention, either.

Third, Mr. Roseberry's history and characteristics weigh strongly in favor of release. Mr. Roseberry is fifty years old with no history of violence or felony offenses. Mot. at 7. His only prior criminal offenses were non-violent misdemeanors committed when he was eighteen years old. *Id.* In addition, a D.C. Jail guard provided positive testimony on Mr. Roseberry's character because he came to the guard's rescue during a violent incident at the jail. August 8, 2022 Hearing Transcript. The guard testified that he was working in his cell block when an inmate assaulted him from behind, hitting his shoulder and breaking his jaw. *Id.* According to the guard's testimony, the inmate was about to strike him again when Mr. Roseberry intervened and grabbed the inmate, thereby preventing further injury to the guard. *Id.* The guard praised Mr. Roseberry for his act of kindness. *Id.* As of result of his intervention, however, Mr. Roseberry had urine and feces thrown on him and was called "the police" by other inmates. Mot. at 6.

Fourth, the Court finds that proper medication and strict supervision will reasonably ensure that Mr. Roseberry does not pose a danger to the community. Unlike before, Mr.

Roseberry is now on a stable medication regimen with drugs prescribed by a psychiatrist at the D.C. Jail.  August 8, 2022 Hearing Transcript.  He has been stable for months and moved out of the mental health unit.  *Id.*  Moreover, Mr. Roseberry's wife has scheduled an appointment for him to visit a local psychiatrist in North Carolina to continue prescribing proper medication for him.  *Id.*  His wife is also available to act as a third-party custodian to ensure that Mr. Roseberry continues to take his prescribed medication and complies with mental health treatment.  *Id.*  These developments show a marked improvement in Mr. Roseberry's mental condition that undermines the government's assertion that he is an ongoing danger to the community.

Against the backdrop of Mr. Roseberry's significantly improved mental health, his nonviolent history, and his rescue of the D.C. Jail guard, the government has not met its burden by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure the safety of any other person and the community.'"  *Munchel*, 991 F.3d at 1279–80 (quoting 18 U.S.C. § 3142(f)).  Despite the severity of the alleged offenses in this case, the government has not shown how Mr. Roseberry, if released, would "pose[] a concrete, prospective threat to public safety."  *Id.* at 1280.  The Court will therefore allow Mr. Roseberry to be released with strict monitoring and proper medication.

For the foregoing reasons, Mr. Roseberry's motion (ECF No. 13) is **GRANTED**.  It is hereby:

**ORDERED** that Mr. Roseberry be released early in the day of August 15, 2022 to the third-party custody of his wife Janay Yarbrough pending sentencing.  During this period Defendant shall be supervised by the Pretrial Services Agency of the District of Columbia and, as necessary, the courtesy supervision of the United States Probation Office for the Western District of North Carolina (PSA/Probation) and be subject to electronic monitoring and twenty-

four hours home confinement, at his residence except for medical necessities and court appearances or other activities specifically approved by the Court including meeting with his attorney; and it is

**FURTHER ORDERED** that within 48 hours of his arrival in North Carolina, Mr. Roseberry shall report to PSA/Probation for the installation of the GPS ankle bracelet (or other monitoring technology at the discretion of PSA/Probation); and it is

**FURTHER ORDERED** that Mr. Roseberry shall follow all the rules, regulations, and requirements of the PSA/Probation Location Monitoring Program, which is incorporated herein by reference. He must maintain reporting requirements as directed by PSA/Probation, abide by all electronic-monitoring requirements, participate in all drug testing / drug program requirements, and abide by all other conditions imposed by the Court and as directed by PSA/Probation. Any violation of his program requirements will subject him, at a minimum, to administrative sanctions and possibly revocation of his release conditions.

Mr. Roseberry will be supervised by a type of electronic monitoring device to be determined by PSA/Probation. He is required to properly maintain and charge the monitoring device each day as necessary. Any attempt to tamper with or mask the device's monitoring capability may result in removal from the program and/or additional criminal charges; and it is

**FURTHER ORDERED** that, as a condition of his release, Mr. Roseberry must remain at his residence in North Carolina 24 hours a day and may not leave that address without pre-approval from PSA/Probation. Mr. Roseberry must maintain his residence and may not change his residence without prior notification to, and approval of, the Court or PSA/Probation; and it is

**FURTHER ORDERED** that Mr. Roseberry shall attend his August 16, 2022 appointment with the psychiatrist in Mooresville, North Carolina to receive prescriptions and

must maintain his current medication regimen unless the psychiatrist directs different medications or dosages as appropriate.  Mr. Roseberry shall sign all required releases of information for PSA/Probation; and it is

**FURTHER ORDERED** that Mr. Roseberry shall report for trial when the date for trial has been established.

The Court is to be notified of any violations of this Order.

**SO ORDERED**.

Dated:  August 10, 2022                                       RUDOLPH CONTRERAS
                                                             United States District Judge