UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA         :

v.                               :    21-CR-576 (RC)

FLOYD RAY ROSEBERRY              :

### REPLY TO GOVERNMENT'S SENTENCING MEMORANDUM

On September 15, 2023, Mr. Floyd Ray Roseberry will appear before this Honorable Court for sentencing on one count of conveying false threatening information, in violation of 18 U.S.C. § 844(e). Mr. Roseberry respectfully requests a sentence of time served followed by a period of supervised release. ECF 40. The government requests a sentence of 30 months of incarceration. ECF 39. Such a sentence would be significantly more than is necessary to serve the purposes of sentencing, and Mr. Roseberry, through undersigned counsel, respectfully submits this reply to the government's request.

Without acknowledging that Mr. Roseberry did not have a device that was in fact capable of doing harm, the government focuses on the potential damage that would have occurred *if* he had such a device, but there was no potential for such harm because he did not have such a device. The government describes Mr. Roseberry's conduct as, "threatening to detonate a bomb that would destroy two-and-a-half city blocks if his demands were not met." ECF 39 at 1. That too is not quite what happened. Mr. Roseberry never said he would detonate a bomb. He repeatedly said that he did not want to harm anyone and would not explode any bomb, but rather the bomb would explode if police shot at him. As was set out in the affidavit in support of the complaint, Mr. Roseberry said: "I don't want nobody hurt. Yes sir, I don't want nobody hurt. I'm not coming here to hurt nobody . . . I'm not gonna let this bomb go off, but if these windows break,

see that little speaker right there, it sets off on decimals. . . . Clear the block, clear the block. Joe Biden I'm not hurting nobody . . . If you want to shoot me and take the chance of blowing up two-and-a-half city blocks . . . please don't shoot the windows the vibe will explode the bomb. . . I have no control of it. . . . decimals is what sets off not me." ECF 1-1. The Facebook recordings demonstrate that Mr. Roseberry also said: "They need to get Joe Biden on here because this baby. It's awful. I'm not hurting nobody, Joe. I'm not pulling the trigger on this thing. I can't. There's no way for me to blow this up. Only you can by shooting a bullet through my window." Mr. Roseberry made multiple similar statements, explaining that he could not and would not explode the device, and it would explode only if he was shot.

      Mr. Roseberry does not dispute that his statements were threats or that law enforcement responded appropriately given the severity of the threats, but the threats made clear that Mr. Roseberry did not want to hurt anyone. This is an important distinction because it demonstrates that even while he was suffering from a psychotic episode (*see* Letter from Dr. Michael Thase), Mr. Roseberry's true peaceful nature was evident. He is not a violent person and would not harm anyone.

      The government also focuses on the disruption caused by Mr. Roseberry's conduct and the statements he made in his psychotic state, describing Mr. Roseberry as broadcasting "his grievances" and trying to suggest that his conduct was somehow tied to the attack at the Capitol on January 6, 2021. ECF 39 at 2, 8. His conduct was not related to the January 6 attack or the 2020 election, and Mr. Roseberry is not a political zealot. The rambling, nonsensical statements he made were not "grievances" that he maintained before or after the charged conduct, as the government suggests. Rather, this is what his brain fixated on when it went into a psychotic state, no doubt fueled by falsehoods perpetuated by others in the news and on the internet, but not

based on beliefs Mr. Roseberry held or holds.

As Dr. Michael Thase reports, "When asked about his feelings about the 2020 election results, Mr. Roseberry said, 'that's the odd thing – I wasn't a big Trump supporter, and I wasn't upset at the time of the election with the results.'" *See* Report by Michael E. Thase, M.D. (submitted under seal). Mr. Roseberry's wife confirms this. She reports that on January 6, 2023, Mr. Roseberry watched the events at the Capitol unfold on television and remarked that the actions of those attacking the Capitol were "stupid" and that the attackers should "not be doing something like that." Contrary to many of those who attacked the Capitol, Mr. Roseberry's actions on the day of his arrest were driven by psychosis, not political beliefs.

While recognizing that Mr. Roseberry qualifies for, and the Court can apply, a diminished capacity departure under § 5K2.13 based on the facts of this case, ECF 39 at 7, the government asks that when considering such a departure, the Court also consider the recommended sentencing range under the United States Sentencing Guidelines for Count One of the Indictment, which the government has agreed to dismiss and has not been proven. The government agreed to dismiss Count One of the Indictment in exchange for Mr. Roseberry's guilty plea on Count Two. According to the government, Mr. Roseberry "received the benefit of his diminished capacity" through this agreement. ECF 39 at 7.  In the plea agreement, however, Mr. Roseberry specifically reserved his right to seek a diminished capacity departure. ECF 25 at 4. There was no agreement that the plea agreement included credit for diminished capacity.

Moreover, Mr. Roseberry was *not guilty* of Count One and on counsel's advice, would have exercised his right to trial if the government had not dismissed that charge. Count One charged a violation of 18 U.S.C. § 2332a(a)(2)(A)&(C), proof of which requires evidence that a person threatened to use "a weapon of mass destruction." A "weapon of mass destruction" is

defined as:

> (A) any destructive device as defined in section 921 of [title 18];
>
> (B) any weapon that is designed or intended to cause death or serious bodily injury through the release, dissemination, or impact of toxic or poisonous chemicals, or their precursors;
>
> (C) any weapon involving a biological agent, toxin, or vector (as those terms are defined in section 178 of this title); or
>
> (D) any weapon that is designed to release radiation or radioactivity at a level dangerous to human life[.]

18 U.S.C. § 2332a(c)(2).

At the time of the offense, Mr. Roseberry was holding a rusted metal can that appeared to be fashioned into an explosive device, but it was not an explosive device. There was no detonator, only molding clay and fishing equipment. After the can was recovered, it was found to contain a small amount of smokeless powder, considered a low explosive, but the device was not capable of detonating by any means. The device did not meet the definition of a destructive device under 18 U.S.C. § 921 because the device was "neither designed nor redesigned for use as a weapon." *See* 18 U.S.C. § 921. *See United States v. Posnjak*, 457 F.2d 1110 (2d Cir. 1972) (commercially available dynamite not a "destructive device" under 26 U.S.C. § 5845(f))*; United States v. Worstine*, 808 F. Supp. 663 (N.D. Ind. 1992) (plastic PVC tubes filled with gunpowder for use as firecrackers not destructive devices because not designed for use as weapons). Nor was the device designed to release toxic chemicals, biological toxins, or radiation. Thus, the device did not meet the definition of a weapon of mass destruction under 18 U.S.C. § 2332a(c)(2), and Mr. Roseberry did not commit the violation charged in Count One.[1]

---

[1] Mr. Roseberry also did not threaten to "use" any weapon—he threatened that if the police shot him, the sound of the gun shot would explode a device in his car. "Use" requires more than mere possession. *See Bailey v. United States*, 516 U.S. 137, 143 (1995). As the Supreme Court noted

The government was aware of undersigned counsel's position regarding Count One when negotiating the plea agreement. Moreover, whatever the reason the government decided not to pursue Count One, that offense is no longer before the Court. The issue before the Court is whether Mr. Roseberry's undisputed diminished capacity mitigates the conduct for which he was convicted and warrants a sentence below the Guidelines range for the offense of conviction. The Court must begin with the Guidelines for the offense Mr. Roseberry committed, not the offense the government alleged, but has not and could not prove.

Finally, the government's comparison to the sentence imposed in *United States v. Dwight Watson*, 1:03-cr-146, is twisted, emphasizing in the body of its memorandum that Mr. Watson was initially sentenced to 72 months and dropping to a footnote that he ultimately was sentenced to *16 months*. ECF 39 at 10-11, n.2. Moreover, Mr. Watson was convicted *after trial*, while Mr. Roseberry accepted responsibility for his conduct and entered a guilty plea. Although Mr. Watson initially was sentenced to 72 months under the *then-mandatory* Guidelines, as the government recognizes in a footnote, after the Supreme Court found that the Guidelines could not constitutionally be considered mandatory, Mr. Watson—despite the fact he went to trial— was sentenced to 16 months, just 4 months more than the time Mr. Roseberry has served. Although, as the government notes, the D.C. Circuit reversed and remanded when the government appealed the sentence, on remand, Judge Hogan did not sentence Mr. Watson to

---

when interpreting the word "use" in relation to a different statute, the "ordinary and natural" meaning of "use" is "'[t]o convert to one's service,' 'to employ,' 'to avail oneself of,' and 'to carry out a purpose or action by means of.' . . . These various definitions of 'use' imply action and implementation." *Id*. at 145. In *Bailey*, the Court concluded that "use" of a firearm required "active employment." Mr. Roseberry did not threaten to actively employ a weapon of mass destruction. He warned (falsely) that there was a bomb and if he was shot, the bomb would explode. He never threatened that he would detonate (use) a weapon. Although his statements constituted conditional threats, they were not threats that he would use a weapon of mass destruction. His conduct was criminal, but it was not a violation of § 2332a.

5

additional prison time because he had been doing well in the community, just like Mr. Roseberry is now—only Mr. Roseberry did not first put the government and the Court through a trial and appeal. Moreover, there is no suggestion that Mr. Watson had evidence that his mental health at the time of the offense was induced by prescribed medications that were contraindicated for his condition. When appropriately compared, Mr. Watson's case strongly supports a sentence of time served, 12 months, in this case.[2]

Finally, counsel notes that other cases in this district also support a sentence of time served here. For example, Judge Howell imposed a sentence of 10 months for a violation of § 844(e) after a defendant threatened to explode a bomb across the street from the White House, resulting in the closure of the area surrounding the White House and delaying the Vice President from returning to his duties. *United States v. Pettaway*, 17-cr-212 (BAH), ECF 26. In another example, Judge Roberts imposed a sentence of time served (11 months) for a violation of § 844(e) after a defendant, on five separate occasions, called Metro authorities and reported that he had a bomb in a Metro station—the government recommended that sentence based on the defendant's mental health and subsequent compliance with medication. *United States v. Gray*, 09-cr-200 (RWR), ECF 26.

These comparable cases, along with all the reasons noted above and those set forth in Mr. Roseberry's Sentencing Memorandum, support a finding that a sentence of time served (12 months) and a term of supervised release would sufficiently serve the purposes of sentencing in this matter.

---

[2] Because 54 days a year are awarded for every 12 months of a sentence, the 12 months Mr. Roseberry served is the equivalent of a sentence of 14 months. A person who is sentenced in federal court to a 14-month term of incarceration serves 11 months and 28 days, day for day, absent the loss of good time credits.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

      /s/
_____
MARY MANNING PETRAS
Assistant Federal Public Defenders
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004
(202) 208-7500 ext. 5109