UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.    ) | 21-CR-576 (RC) |
| ) | |
| FLOYD RAY ROSEBERRY ) | |
| ) | |

## MOTION FOR EARLY TERMINATION OF PROBATION

Mr. Floyd Ray Roseberry, through undersigned counsel, respectfully moves this Honorable Court to terminate his term of probation early, pursuant to 18 U.S.C. § 3564(c). Mr. Roseberry's probation officer in the Middle District of Tennessee, Officer Kara Sanders, informed undersigned counsel that the U.S. Probation Office supports early termination. Additionally, Mr. Roseberry's former probation officer, who supervised him for the entirety of his pretrial supervision and nearly a year of his post-conviction supervision in the Western District of North Carolina, Officer Seth Yates, informed undersigned counsel that he does not object to early termination. The government has indicated that they oppose early termination because although Mr. Roseberry is doing well, the government believes supervision is necessary to ensure Mr. Roseberry maintains compliance with his prescribed medication. For the reasons discussed below, however, supervision is not necessary to ensure medication compliance, and Mr. Roseberry's probationary term should be terminated early based on his outstanding compliance and because early termination is in the interest of justice.

## BACKGROUND

On August 10, 2022, the Court ordered Mr. Roseberry released with conditions including electronic monitoring. Mr. Roseberry maintained perfect compliance with the conditions of his pretrial release. On January 27, 2023, Mr. Roseberry pled guilty to one count of threats to use

explosives, in violation of 18 U.S.C. § 844(e). *See* Plea Agreement at 1, ECF 25. On September 15, 2023, the Court sentenced Mr. Roseberry to five years of probation. *See* Judgment at 2, ECF 45. Mr. Roseberry has now served 29 months of his term of probation, nearly half of the term imposed and more than twice the minimum amount of time required for early termination pursuant to § 3564(c). His term of probation is currently set to expire on September 14, 2028.

## LEGAL STANDARD

Under 18 U.S.C. § 3564(c), at any time after the expiration of one year of probation, the court may, after considering the § 3553(a) factors, terminate a term of probation and discharge the defendant "if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice."

The overarching parsimony provision of §3553(a) instructs the Court to "impose a sentence sufficient, but not greater than necessary." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). The § 3553(a) factors to be considered are the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1); the need for the sentence imposed to afford adequate deterrence, protect the public, and provide the defendant with needed services, § 3553(a)(2)(B), (C), and (D); the kinds of sentence and the sentencing range established by the Sentencing Guidelines, § 3553(a)(4); any pertinent policy statements by the Sentencing Commission, § 3553(a)(5); the need to avoid unwarranted sentence disparities, § 3553(a)(6); and the need to provide restitution to any victims, § 3553(a)(7).

Although Mr. Roseberry's compliance has been extraordinary, any notion that "exceptional behavior" while on supervision is required for early termination is "incorrect as a matter of law." *United States v. Ponce*, 22 F.4th 1045, 1047 (9th Cir. 2022). Nor need a defendant show any "undue hardship." *Id.*

2

**ARGUMENT**

Nearly halfway through his term of probation, Mr. Roseberry is in perfect compliance with all conditions of supervision. His current probation officer, Officer Sanders, supports early termination and confirmed that Mr. Roseberry has had no issues of non-compliance. Officer Sanders confirmed that Mr. Roseberry has maintained a stable residence with his wife, continues to provide verification of mental health counseling, and communicates well with the probation office. His former probation officer, Officer Yates, indicated that Mr. Roseberry was "always a pleasure to visit with" and "seemed focused on keeping to healthier habits and hobbies with more supportive people surrounding him." Officer Yates does not object to early termination.

Since being released from D.C. Jail, Mr. Roseberry has continued to receive mental health treatment and meets with his psychiatrist monthly. Mr. Roseberry was diagnosed with bipolar disorder and post-traumatic stress disorder when he was a teenager from the trauma he experienced as a child. *See* Def. Sent'g Mem. at 2, ECF 40. At the time of his arrest and due to the lack of psychiatric care in his small town, Mr. Roseberry was being improperly prescribed medications that turned out to be harmful to someone with his diagnosis. *Id*. at 5. While at D.C. Jail, he began a new medication regimen which was found to be effective. *Id.* At present, Mr. Roseberry reports his medication continues to be "very effective" and assures the Court that he will maintain his success by continuing to attend his appointments and take his medications as prescribed.

Mr. Roseberry's living situation is stable, positioning him well to maintain the excellent progress he has made since his release. He currently lives in Tennessee with his wife, Janay Yarbrough, who works as a quality contracts manager. Mr. Roseberry reports having a strong relationship with his wife, who continues to help him maintain his medication regimen, and has consistently done so for as long as they have been married. *See* Def. Sent'g Mem. at 2, ECF 40.

Mr. Roseberry continues to support his wife through her cancer treatment, which is ongoing. *Id* at 6. Mr. Roseberry's son Chris and stepdaughter Tori live in North Carolina and Oklahoma respectively, with his wife's family living nearby in Tennessee.

Mr. Roseberry is unable to be employed due to being disabled but spends much of his time caring for his mother-in-law. Mr. Roseberry's wife says that Mr. Roseberry has been a "huge asset" in helping her mother with her day-to-day needs. He is committed to staying healthy for his family to "enjoy the most out of life with them." However, Mr. Roseberry's supervision hinders his ability to travel to see his children and his 6-year-old granddaughter McKenna. Without any travel restrictions or requirements for prior notification, he could more easily plan visits and more freely spend quality time with them. Mr. Roseberry's family connections, stable residence, and excellent compliance with the conditions of probation lay the foundation for a successful future.

Early termination of Mr. Roseberry's term of probation is warranted for numerous reasons. The offense conduct in this case occurred more than four years ago. Mr. Roseberry quickly accepted full responsibility for his actions. *See* PSR at 7, ECF No. 33. He spent approximately 12 months incarcerated and nearly 30 months on probation for his conduct. Now 54 years old, Mr. Roseberry has gained significant perspective about his life, his case, and the importance of mental health. He deeply regrets the offense conduct but acknowledges that this case has changed his life and allowed him to find a treatment plan that works. As described above, Mr. Roseberry's stable home and dedicated family demonstrate his smooth reintegration into the community as a law-abiding citizen and highlight the disutility of additional supervision.

The government opposes this motion because it believes Mr. Roseberry requires additional supervision to remain compliant and continue taking his medication. However, as the Court may recall, Mr. Roseberry did not commit the instant offense because he failed to take prescribed

4

medication, but rather because he was prescribed (and complied with) medication that was contraindicated for his condition. Mr. Roseberry sought treatment *before* the offense occurred and knows the value of proper mental health treatment. He does not need supervision to ensure he complies with treatment, rather, he needed, and now has, appropriate treatment.

Moreover, Mr. Roseberry's wife, Janay Yarbrough is his primary caregiver and is diligent in coordinating his appointments, preparing his medications, and validating that he takes the prescribed dose each day. *See* Exhibit 1, Letter from Janay Yarbrough. Mr. Roseberry is independently motivated to continue taking his medication and has the support of his wife to maintain his success. Mr. Roseberry's success is independent of his supervision, evidenced by his probation officer's support for this motion. Time and money spent supervising Mr. Roseberry should instead go towards providing reentry support to those with greater needs, who lack the strong support system he is fortunate to have.

An analysis of the 18 U.S.C. § 3553(a) factors that are relevant strongly supports the termination of Mr. Roseberry's term of probation. Mr. Roseberry's characteristics favor early termination, as demonstrated by his dedication and commitment to his family. Mr. Roseberry was first arrested on August 20, 2021, and he has been incarcerated or otherwise under restrictive supervision since that time. The sentence Mr. Roseberry has already served is more than sufficient to deter future criminal conduct. His consistent mental health treatment and three-and-a-half years of perfect compliance while under pretrial supervision and then on probation demonstrates that he in no way poses a danger to the public and has been successfully deterred. His stable housing and commitment to his health are strong evidence that continuing supervision is not necessary to provide him with additional services, training, or vocational assistance.

Studies show that terminating an offender's supervised release or probation early does not

compromise community safety, and it saves significant judicial resources. Laura M. Baber & James L. Johnson, *Early Termination of Supervision: No Compromise to Community Safety*, Fed. Prob. 17, 21 (Sept. 2013) ("[T]he attributable cost avoidance [of early termination] is significant."); *see also Early Termination of Supervision Cost-Effective & Safe*, U.S. Courts (Sept. 24, 2013), https://www.uscourts.gov/news/2013/09/24/early-termination-supervision-cost-effective-and-safe (explaining that early termination saves time, money, and resources).[1]

Accordingly, the Judicial Conference Committee on Criminal Law of the Administrative Office of the Courts encourages courts and probation officers to consider early termination of supervision in cases just like this one: where "the conditions of supervision have been met, and the offender has successfully reintegrated into the community and does not pose a foreseeable risk to public safety in general or to any individual third-party." John M. Hughes, Mem. to All Chief Probation Officers on New Criteria for Accessing Early Termination of Supervision (Oct. 30, 2002). Courts should "align [their] resources effectively to address those cases that are more complex and pose the greatest risks to community safety, while reducing expenditures in less complex and lower risk cases when it is prudent to do so." Hon. Robert Holmes Bell, Mem. on Cost-Containment Strategies Related to Probation and Pretrial Services Offices (Feb. 16, 2012).

A recidivism study conducted by the Administrative Office of the United States Courts and Office of Probation and Pretrial Services, which examined a cohort of offenders whose supervision terms expired or were terminated early in fiscal year 2005, "found that during the 36-month follow-up period, offenders granted early termination do not pose a greater safety risk to the community than offenders who successfully served the entire supervised release term imposed by the sentencing court." U.S. Sent'g Comm'n, *Federal Offenders Sentenced to Supervised Release* at

---

[1] *Available* at https://www.uscourts.gov/news/2013/09/24/early-termination-supervision-cost-effective-and-safe.

62-63 n. 263 (July 2010) (internal quotation marks and citation omitted). "In fact, early-term offenders in this study presented a lower risk of recidivism than their full-term counterparts." *Id*. Another study showed that offenders who violate the conditions of supervision tend to do so early in their terms of supervision because the period immediately following release from prison is a particularly high-risk time. *Id.* at 63 n. 265. Mr. Roseberry has made it through this high-risk period without incident. It is not necessary to keep him on supervision to protect the community.

"At some point, once justice has been served, the system must take care to avoid erecting roadblocks that might prevent an offender from reintegrating into society and becoming a productive and useful citizen again." *United States v. Cunningham*, 2014 WL 3002207, at 2 (S.D. Cal. 2014) (granting a defendant's motion for early termination of supervised release). Early termination of probation will assist Mr. Roseberry's further reintegration into the community as a productive member of society.

Early termination of Mr. Roseberry's probation will benefit his life and the lives of his family members. It will allow him to be a more involved parent and grandparent and more easily care for his family. While exceptional conduct on probation is not necessary for early termination, Mr. Roseberry's conduct has been excellent—far exceeding the standard of compliance needed for the Court to grant this motion. He is not the same person he was at the beginning of this case and has moved forward. After nearly 30 months of supervision with a perfect record, it is appropriate for the Court to direct the resources and objectives of the U.S. Probation Office to where they are needed and allow Mr. Roseberry to be free from supervision.

## CONCLUSION

For the foregoing reasons, and for any other reasons that this Court may deem just and proper, the Court should grant this motion, follow the recommendation of the Probation Office,

terminate Mr. Roseberry's term of probation, and discharge him, pursuant to § 3564(c).

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Mary Manning Petras
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500
Mary_Petras@fd.org
