**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No.: 21-576 (RC) |
| | : | |
| FLOYD RAY ROSEBERRY, | : | Re Document Nos.: 49, 51 |
| | : | |
| Defendant. | : | |

# MEMORANDUM OPINION

## DENYING DEFENDANT'S MOTION FOR EARLY TERMINATION OF PROBATION

## I. INTRODUCTION

Defendant Floyd Ray Roseberry moves the Court for early termination of his probation. Mr. Roseberry's probation officer supports his motion, but the United States opposes it. Mr. Roseberry is currently serving a five-year probation sentence, of which he has served three years. The Court acknowledges that Mr. Roseberry has complied with the terms of his probation and taken care of family members in need. The Court is unpersuaded, however, that this behavior warrants cutting Mr. Roseberry's probation sentence roughly in half given the severity of the crime and the assurance being subject to probation provides that Mr. Roseberry will continue to receive the mental-health treatment he needs to avoid future criminal conduct. The Court therefore denies Mr. Roseberry's request without prejudice.[1]

[1] Mr. Roseberry separately moves to file an exhibit under seal because it contains confidential medical records. *See* Mot. File Under Seal at 1, ECF No. 51. The motion appears to be unopposed, and the Court will grant it.

## II. FACTUAL BACKGROUND

On August 21, 2021, Mr. Roseberry drove from his home in North Carolina to Washington, D.C.; parked his truck on a sidewalk next to the Library of Congress; and began a Facebook livestream from his truck. Statement of Offense ¶ 1, ECF No. 26. Mr. Roseberry then (incorrectly) claimed to be in possession of an explosive device engineered to detonate upon any loud sound, such as a bullet shot. *Id.* ¶ 2. From his truck, Mr. Roseberry "referenced President Biden nearly 40 times, specifically threatening the President that he would damage buildings in and around the U.S. Capitol if the President and House Speaker Nancy Pelosi did not meet his demands and resign from office." *Id.* ¶ 4.

These threats resulted in the evacuation of the Cannon House Office Building, the Jefferson and Madison Buildings of the Library of Congress, and the United Supreme Court; forced all other buildings in the Capitol Complex to enter a shelter-in-place status, including the United States Capitol Building itself; and diverted vehicular and pedestrian traffic for approximately seven hours. *Id.* ¶ 6. After an approximately four-hour long standoff, Mr. Roseberry surrendered to law enforcement. *Id.* ¶ 5.

Mr. Roseberry suffers from bipolar disorder and post-traumatic stress disorder. Order Granting Mot. Recons. Order Detention & Imposing Conditions Release at 3, ECF No. 18. At the time of his offense, Mr. Roseberry was "under the influence of contraindicated medications," which "played a role in the offenses charged." *Id.* Mr. Roseberry's behavior appeared to improve after he entered custody and received appropriate, as opposed to exacerbating, medicine. A D.C. Jail guard stated that while Mr. Roseberry was in custody "he came to the guard's rescue during a violent incident at the jail." *Id* at 4.

Mr. Roseberry ultimately pleaded guilty to one count of threatening to use explosives in violation of 18 U.S.C. § 844(e), and the remaining count of the indictment was dismissed. Judgment at 1, ECF No. 45. The Court sentenced Mr. Roseberry to sixty months of probation, twelve of which were to be served with location monitoring. *Id.* at 2. The Court took into account Mr. Roseberry's mental condition and the effect of the contraindicated medication he was on at the time when it granted Mr. Roseberry's request for a variance in sentencing. *See* Statement of Reasons at 2, ECF No. 46; *see also* Def.'s Mot. Downward Departure & Sentencing Mem. at 7–9, ECF No. 40.

Since the beginning of his probation, Mr. Roseberry has done well. He reports, and the Government suggests nothing to the contrary, that he has been in full compliance with the terms of his probation. *See* Mot. Early Termination Probation ("Def.'s Mot.") at 3, ECF No. 49. He continues to receive mental-health treatment, as required by the terms of his probation, which he says has been "very effective." *Id.* Although he cannot work due to a disability, Mr. Roseberry supports his wife, who is undergoing cancer treatment, and cares for his mother-in-law. *See id.* at 3–4. Mr. Rosebery's former probation officer stated that Mr. Roseberry was "always a pleasure to visit with" and that he "seemed focused on keeping to healthier habits and hobbies with more supportive people surrounding him." *Id.* at 3. Mr. Roseberry's current probation officer conveyed "that the U.S. Probation Office supports early termination." *Id.* at 1.

Mr. Roseberry has now served approximately three years out of his five-year probation sentence. He also spent almost a year in the D.C. jail followed by roughly a year of home confinement before sentencing, as discussed at the sentencing hearing on September 15, 2023. Mr. Roseberry now moves to end his probation entirely.

## III. ANALYSIS

Under 18 U.S.C. § 3564(c), the Court may "terminate a term of probation previously ordered . . . [if] such [an] action is warranted by the conduct of the defendant and the interest of justice" after considering the factors put forth in 18 U.S.C. § 3553(a). These factors include:

> (1) the nature and circumstances of the offense and defendant's history and characteristics; (2) deterrence of criminal conduct; (3) protection of the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment; (5) the applicable sentencing guideline range for the offense and pertinent policy statements issued by the U.S. Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense.

*United States v. Scanlon*, 14-CR-007 (RC), 2024 WL 1716645, at *2 (D.D.C. Apr. 22, 2024) (quoting *United States v. Kaplan*, No. 14-cr-226, 2021 WL 4521041, at *2 (D.D.C. Oct. 4, 2021).

### A. Factors Under 18 U.S.C. § 3553(a)

The Court begins by analyzing the factors from Section 3553(a). It need not address restitution, however, because it did not impose any restitution in this case. *See* Statement of Reasons at 4.

#### 1. Characteristics of the Offense and Defendant

The first factor weighs against terminating Mr. Roseberry's sentence. Mr. Roseberry committed a serious offense. He threatened to detonate explosives near the seat of the federal government, resulting in the complete evacuation of many important federal buildings, including the United States Supreme Court, and forcing other buildings to enter a shelter-in-place status. He also forced a standoff with law enforcement that lasted many hours. *See* Statement of Offense ¶ 6. There was significant cost to his actions: He disrupted important government business for many hours and likely instilled fear in many federal workers. *See id.* As the Court

explained at Mr. Roseberry's sentencing, the offense indicates at least a serious threat of violence. *See also United States v. Watson*, 253 F. Supp. 2d 1, 3 (D.D.C. 2003) (finding that "threats to detonate explosives on The National Mall . . . is certainly a violent offense"). The Court does not take that crime lightly.

The Court acknowledges that there are mitigating circumstances at play. But the Court gave ample consideration to those mitigating circumstances when it granted a downward variance because Mr. Roseberry's extenuating medical circumstances "contribut[ed] substantially to the commission of the offense." Statement of Reasons at 2. These already-considered mitigating factors do not warrant further reduction in the sentence that the Court imposed.

**2. Deterrence, Rehabilitation and Public Protection**

The Court finds that the second, third, and fourth factors—deterrence, rehabilitation, and the protection of the public—weigh against early termination. Mr. Roseberry's criminal conduct appears to have stemmed from taking incorrectly prescribed medication. Ensuring that Mr. Roseberry continues to attend mental-health appointments and is supervised in doing so by probation therefore promotes both Mr. Roseberry's rehabilitation and the protection of the public. While there may be less need to deter Mr. Roseberry specifically, the Court has already acknowledged that point at sentencing when it found that a sentence of probation, rather than incarceration, was appropriate.[2]

[2] At the sentencing hearing, the Court explained that it did not place great weight on general deterrence in this case because, given the unique mental-health considerations, it is unlikely that other defendants will look to this case and conclude that political violence is tolerated.

Mr. Roseberry argues that he has already been successfully deterred, he has already rehabilitated, and the public is safe. *See* Defs.' Mot. at 5. He emphasizes that his offense was due to contraindicated medication, rather than a failure to take prescribed medication. *Id.* at 4–5. In previous cases, however, this Court has considered it "very important that" factors "which facilitated the activity leading to" conviction continue to be monitored. *Scanlon*, 2024 WL 1716645, at *3. When initially setting the terms of Mr. Roseberry's probation, the Court was aware of the points Mr. Roseberry raises and still determined that sixty months of probation was an adequate amount of time for Mr. Roseberry to take advantage of structured mental-health treatment. Continued imposition of these requirements ensures that Mr. Roseberry stays on track, a guarantee that is important given the severity of Mr. Roseberry's offense.

**3. Other Sentences**

The fifth and sixth factors, applicable sentencing ranges and the need to avoid sentencing disparities with similar cases, are neutral. The Court already discussed the issue of sentencing disparities and the applicable sentencing ranges during the sentencing hearing. It disagreed with the Government's argument, which the Government presses again here, that the sentence imposed is far more lenient than the one imposed in *United States v. Watson*, 483 F.3d 828, 829–30 (D.C. Cir. 2007). This Court determined that the sentence it imposed was in line with the most relevant comparators. Of course, as the Government correctly points out, reducing Mr. Roseberry's sentence might create such a disparity. For his part, Mr. Roseberry does not appear to argue that either of these factors favor early termination. These factors, the Court finds, are neutral. *Cf. United States v. Ewing*, No. CR 20-220 (JDB), 2025 WL 3204523, at *4 (D.D.C. Nov. 14, 2025) (explaining that the "sentencing disparities factor [is] of limited utility in the early-termination context" (cleaned up)).

**B. Mr. Roseberry's Conduct and the Interest of Justice**

After considering the applicable Section 3553(a) factors, the Court now must determine whether early termination is "warranted by the conduct of the defendant and the interest of justice." 18 U.S.C. § 3564(c). Mr. Roseberry makes two arguments here, which form the brunt of his overall motion: (1) his conduct warrants early termination because he has been in "perfect compliance" with the terms of his probation and his probation officer supports his motion, and (2) the interest of justice favors early termination because it would allow him to more easily visit his grandchild and thus further his reintegration into society. *See* Def.'s Mot. at 7.

Starting with the first argument, the parties sharply disagree on whether Mr. Roseberry must demonstrate exceptional behavior to warrant early termination or merely must show that he complied with the terms of his probation. *Compare* Defs.' Mot. at 2, *with* Gov't Opp'n Def.'s Mot. Early Termination Probation ("Gov. Opp'n") at 3, ECF No. 50. The Government points to a host of cases stating, in different formulations, that more than mere compliance is required. *See, e.g.*, *United States v. Rader*, No. 1:22-CR-57-RCL, 2024 WL 474535, at *3 (D.D.C. Feb. 7, 2024) ("Courts have typically held that defendants seeking early termination under § 3564(c) must demonstrate more than just compliance with the terms of probation.") (collecting cases). This Court has said much the same in the context of early termination of supervised release. *See United States v. Cymerman*, No. CR 15-00179 (RC), 2023 WL 8005095, at *3 (D.D.C. Nov. 17, 2023). That is because compliance is "expected"—indeed, it is ordered. *See id.* "If perfect compliance alone were sufficient[,] the exception would swallow the rule." *Id.* (cleaned up).

More recently, some courts, at least in the context of early termination for supervised release, have held that exceptional behavior is not required. *See United States v. Hale*, 127 F.4th 638, 641 (6th Cir. 2025) ("The text does not make 'exceptionally good' conduct an absolute

prerequisite to relief."); *United States v. Ponce*, 22 F.4th 1045, 1047 (9th Cir. 2022) ("[T]he "exceptional behavior" rule . . . is incorrect as a matter of law."); *United States v. Melvin*, 978 F.3d 49, 53 (3d Cir. 2020) ("[E]xtraordinary circumstances may be *sufficient* to justify early termination of a term of supervised release, but they are not *necessary* for such termination."); *see also United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016) (holding that "changed circumstances" were not a prerequisite to a change in the conditions of supervised release and therefore denying the defendant's challenge to the imposition of greater restrictions).

Although these cases may seem to be in tension, any conflict is more apparent than real. As this Court has explained before, "while a defendant need not show extraordinary or unusual conduct to warrant termination of supervised release, mere compliance with the conditions of release is not necessarily sufficient to merit early termination because model conduct and compliance is expected of a person under the magnifying glass of supervised release." *Cymerman*, 2023 WL 8005095, at *3 (cleaned up). In other words, a court is not *required* to deny a motion for early termination because there was no showing of extraordinary behavior or changed circumstances. But a district court is typically well within its discretion to deny the motion absent such a showing. As multiple circuit courts have concluded, it is unlikely that a district court will grant early termination without extraordinary behavior or changed circumstances. *See Hale*, 127 F.4th at 641 ("We might expect that district courts will generally find early termination proper only when exceptionally good conduct or other changed circumstances are present." (cleaned up)); *Melvin*, 978 F.3d at 53 ("We think that generally, early termination of supervised release under § 3583(e)(1) will be proper only when the sentencing judge is satisfied that new or unforeseen circumstances warrant it. That is because, if a sentence was sufficient, but not greater than necessary when first pronounced, we would expect

that something will have changed in the interim that would justify an early end to a term of supervised release." (cleaned up)).[3]

Mr. Roseberry has shown continued compliance with the terms of his probation. He also represents that he has taken care of family members and generally behaved well since the Court imposed its sentence. In the Court's judgment, however, that is not enough to warrant cutting Mr. Roseberry's sentence almost in half. As the Government points out, the Court was well aware of Mr. Roseberry's new medication regimen and his strong family ties when it imposed its sentence. *See* Gov. Opp'n at 6. The Court imposed a five-year probation sentence in large part because of the severity of Mr. Roseberry's crime and because continued monitoring through probation would provide an added safeguard to ensure that Mr. Roseberry continued to receive the medical treatment he needs to keep the public safe. The Court concluded at the time that five-years of probation was a sentence that was "sufficient, but not greater than necessary."

---

[3] Another potential wrinkle is that the termination of probation and the termination of supervised release may not be the same for purposes of this analysis. The analysis for whether to terminate the two is generally "analogous." *See United States v. Ferrell*, 234 F. Supp. 3d 61, 63 (D.D.C. 2017). Unsurprisingly, then, the parties cite cases for the early termination of supervised release and probation almost interchangeably, and the Court has done so as well. But probation and supervised release "play different roles in the sentencing scheme." *United States v. Little*, 78 F.4th 453, 455 n.6 (D.C. Cir. 2023). Probation is "a standalone sentence" served in lieu of imprisonment. *Id.* at 455. Supervised release, by contrast, is a "mechanism for court supervision after time in prison." *Id.* at 459. In other words, probation *is the punishment imposed*, whereas supervised release, while no doubt a partial encumbrance on liberty too, is a follow-on to a sentence of incarceration. This has led some courts to say that "[s]upervised release is a rehabilitative endeavor, serving an 'entirely different purpose than incarceration.'" *United States v. Brathwaite*, No. CR 11-186 (JDB), 2025 WL 1784435, at *2 (D.D.C. June 26, 2025) (quoting *Pepper v. United States*, 562 U.S. 476, 502 n.15 (2011)). Thus, deciding whether to terminate supervised release may be more sensitive to signs that the rehabilitative purposes of the sentence have been accomplished than decisions to terminate probation, which must also consider that probation is the punishment imposed for the crime in lieu of prison. The Court, however, does not rely on this distinction as a basis for deciding this case. *Cf. United States v. Hartley*, 34 F.4th 919, 932 (10th Cir. 2022).

*Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (quoting 18 U.S.C. § 3553(a)). Nothing in Mr. Roseberry's current motion changes that conclusion.

The Court acknowledges that Mr. Roseberry states that he will continue to stay on his treatment plan, and his probation officer is apparently satisfied that continued monitoring is unnecessary. *See* Def.'s Mot. at 1, 3. But the Court is not yet convinced that probation is unnecessary to ensure continued compliance, and, even if it were, the severity of the crime warrants continued supervision for a period of time greater than half of the probation term the Court imposed.

The Court is similarly unpersuaded by Mr. Roseberry's claim that an end to probation is important to further his rehabilitation and thus serves the interest of justice. Mr. Roseberry argues that early termination will allow for more community integration, particularly visits to his granddaughter who lives out of state, which is currently impeded by travel restrictions and requirements for notification prior to travel. *See* Def.'s Mot. at 4. But Mr. Roseberry makes no showing of any meaningful impediment. He has given no indication that probation has ever denied a request to visit his granddaughter or even that probation has ever been dilatory in responding to such requests. In the Court's experience, probation generally encourages probationers to spend time with family and form close bonds with family. Further, given his probation officer's support for his current motion, the Court doubts probation will create meaningful impediments to Mr. Roseberry visiting his granddaughter.

## IV. CONCLUSION

For the foregoing reasons, Mr. Roseberry's Motion for Early Termination of Probation is denied without prejudice, and Mr. Roseberry's motion to file an exhibit under seal is granted. Mr. Roseberry may renew his request for early termination in sufficient time for the Court to act

by the four-year anniversary of his sentencing. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: October 5, 2026

RUDOLPH CONTRERAS
United States District Judge